**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | | |
|---|---|---|---|
| TERESE ORLANDO, | ) | | |
| Plaintiff, | ) ) | | |
| vs. | ) ) | No. | 1:07-cv-0294-DFH-DML |
| WAL-MART, | ) ) | | |
| Defendant. | ) ) | | |

**Entry Granting Motion for Summary**
**Judgment and Directing Entry of Judgment**

Plaintiff Terese Orlando alleges in this action that defendant Wal-Mart terminated her employment and in so doing violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Wal-Mart seeks resolution of Orlando's claim through the entry of summary judgment. For the reasons explained in this Entry, the defendant's motion for summary judgment (dkt 40) must be granted.

A motion for summary judgment must be granted if "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003), quoting Fed. R. Civ. P. 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A "material fact" is one that "might affect the outcome of the suit." *Anderson,* 477 U.S. at 248. "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996), citing *Anderson,* 477 U.S. at 248.

Orlando has not responded to the motion for summary judgment. Accordingly, the factual assertions on which the motion for summary judgment is based and that are properly supported by the evidentiary record are accepted as true for the purpose of resolving that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). By not responding to the motion for summary judgment, Orlando has conceded Wal-Mart's version of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56.1(h), of which Orlando was notified. This conclusion does not alter the standard for

assessing a Rule 56(c) motion, but it does "reduc[e] the pool" from which the facts and inferences relevant to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

Wal-Mart Assistant Manager Perry Staten hired Orlando on March 30, 2006 as a temporary associate at Wal-Mart's store in Greenwood, Indiana. Orlando told Staten during her initial interview that she had osteoarthritis in her legs and that she "might have to sit down once in a while," so she would need a "standby" chair. Staten replied, "No problem." At the time of Orlando's hiring, the Greenwood Wal-Mart store was not opened, but was being prepared for its grand opening. Orlando was hired as a "People Greeter," but she did not perform that function because the store was not open. Instead, she performed other tasks, consisting of sitting at a table while answering phones, paging people over the intercom, giving messages to people, answering questions from vendors, and checking people in and out of the store. During her employment, Orlando never requested a chair because she sat at a table in the front of the store to perform her tasks. In adherence to dress code, Orlando wore dark pants to work everyday.

As soon as Orlando's first week and throughout the duration of Orlando's employment, Wal-Mart management received numerous complaints that Orlando was rude and unhelpful, both in person and on the phone. Orlando's overhead pages were loud and obnoxious and she repeated her pages excessively. Co-Manager Tammy Hilmer-Dodds received at least two complaints from vendors that Orlando was very unpleasant to them while they were signing in and out of the store. Vendors also complained to Hilmer-Dodds that Orlando would place them permanently on hold when they called the store, never picking the line back up. They also said that when they would ask for a specific manager, Orlando would simply say, "she's not here" and hang up. Store associates also complained to Hilmer-Dodds that Orlando's intercom pages were excessively loud and obnoxious. Staten also received seven or eight complaints about Orlando from vendors, associates, and applicants. Assistant Manager Tina Paff, who was in charge of the front of the store, said that every day Orlando worked, she received complaints from vendors and Wal-Mart personnel about Ms. Orlando's rude and unprofessional conduct.

Hilmer-Dodds spoke to Orlando regarding the complaints within about a week of Orlando's hire date. She advised Orlando of complaints about her phone etiquette and demeanor when people were coming in and out of the store. Hilmer-Dodds explained the correct way to answer the phone and to take messages. Staten also had various discussions with Orlando about her performance, including that she was entering the wrong telephone extensions and dealing and communicating inappropriately with vendors and potential associates. Staten also discussed with Orlando the complaint he received from a vendor who said she had cursed at him.

Eventually, Hilmer-Dodds spoke with Store Manager Ron Hancock about Orlando's unprofessional conduct, and it was decided that Orlando's employment should be terminated. On April 14, 2006, three days prior to the store's opening, Hilmer-Dodds terminated Orlando's employment. Orlando was told that the termination of her employment was due to complaints about her work performance. Because of the timing, Orlando never performed the job duties of a People Greeter. According to Orlando's

2

deposition testimony, which the court must accept as true for purposes of summary judgment, during this same termination meeting, Hilmer-Dodds told Orlando: "You are not getting a chair, and you're not going to sit down in a chair."  When questioned as to why Orlando would not receive a chair, Hilmer-Dodds responded: "When the store opens up, it's not going to be a good image for us to see you sitting there with your deformed legs." However, Hilmer-Dodds never saw Orlando's legs because she had worn pants every day.

The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).[1]  The ADA also provides that an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."  42 U.S.C. § 12112(b)(5)(A).

The term "disability" is defined under the ADA as: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment by one's employer.  42 U.S.C. § 12102(2); *Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005).  Orlando bears the burden of establishing that she was disabled.  *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001).  To establish a violation of the ADA, an employee must show: "1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation."  *Stevens v. Illinois Dep't of Transp.,* 210 F.3d 732, 736 (7th Cir. 2000) (citations omitted).

The Supreme Court has directed that the determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case.  *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483 (1999).  Orlando may prove her discrimination claim either by presenting direct evidence or by relying on the indirect, "burden-shifting" method of proof outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  These models are applicable to a disparate treatment discrimination claim under the ADA.  See *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1089 (7th Cir. 2000).

---

[1]As explained in *Fredricksen v. United Parcel Service Co.,* 2009 WL 2925451, No. 08-2060 (7th Cir. September 8, 2009):

> Significant changes to the ADA took effect on January 1, 2009, after this appeal was filed.  See ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).  Congress did not express its intent for these changes to apply retroactively, and so we look to the law in place prior to the amendments.

2009 WL 2925451 at *4 n.1, slip op. at p. 7 n.1 (citing cases).

3

Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997). The direct evidence must show that the defendant said or did something indicating discriminatory animus with regard to the specific employment decision in question. *Id.* In short, "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers,* 320 F.3d at 753 (citation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Illinois Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004), quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

Orlando's testimony about alleged comments made about her legs does not show direct evidence of disability discrimination. Even according to Orlando's testimony, these alleged comments were not presented as the reason for the termination, and the evidence that Orlando repeatedly failed to meet Wal-Mart's expectations for its employees is undisputed and overwhelming. Orlando's own evidence shows that Wal-Mart employed a number of other people who had disabilities, including those confined to wheelchairs. No reasonable jury could find on the basis of the alleged comments that Wal-Mart fired Orlando because of a real or perceived disability.

Under the alternative indirect method of proof, in *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). The test consists of three steps. First, the plaintiff must establish a *prima facie* case of discrimination. Second, if the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). Third, if a legitimate, non-discriminatory reason is offered, the plaintiff must come forward with evidence to show that the stated reason is not the true one, but only a pretext for discrimination. See *McDonnell Douglas,* 411 U.S. at 802-04; *DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 401 (7th Cir. 1999).

Orlando contends Wal-Mart terminated her employment because she is disabled and/or because Wal-Mart regarded her as being disabled. Because there is no direct evidence in this case of discrimination against Orlando based on her asserted disability, Orlando must rely on the burden-shifting method of proof set out in *McDonnell Douglas.* To establish a *prima facie* case of age discrimination under the ADA, Orlando is required to produce evidence that, if believed, would show that: (1) she is disabled within the meaning of the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005). Consistent with the burden-shifting method of proof set out in *McDonnell Douglas,* if a *prima facie* case of such discrimination is made and if a legitimate

explanation is provided, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's stated reasons are a pretext for disability discrimination.

Orlando's alleged disability is osteoporosis and required use of a cane occasionally. During the time she was employed by Wal-Mart, she could do anything as long as she had her cane. She was not limited in any daily activities, and she never missed a day of work due to her condition. Orlando could also perform all household chores, including cleaning the sink, floors, and tub, cooking, doing laundry and ironing, dusting, as well as shop. Orlando also handled yard and gardening tasks. Orlando also testified that she could both walk and stand.

Orlando never provided Wal-Mart with any medical documentation regarding work restrictions due to her osteoarthritis or leg condition. In fact, no doctor has ever placed her on any work restrictions. Orlando alleges that Wal-Mart perceived her to have a disability because she told them she had osteoporosis, management saw she had a cane, and she told them she would need a "standby chair."

The first question is whether Orlando is disabled within the meaning of the ADA. "To qualify as disabling, a limitation on the ability to walk must be 'permanent or long term, and considerable compared to the walking most people do in their daily lives.'" *Fredricksen v. United Parcel Service Co.,* 2009 WL 2925451 at *5, No. 08-2060, slip op. at p. 10 (7th Cir. Sept. 8, 2009), quoting *EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 802 (7th Cir. 2005). Even if Orlando did not have an actual disability, she could show that she was a qualified individual with a disability if Wal-Mart perceived her to have a disability because she told them she had osteoporosis, she walked with a cane, and she told them she needed a "stand by" chair. To establish that Wal-Mart regarded her as disabled, Orlando must show that (1) Wal-Mart mistakenly believed she had a physical impairment that substantially limits one or more major activities, or (2) Wal-Mart mistakenly believed that an actual, nonlimiting impairment substantially limited one or more major activities. *Mack v. Great Dane Trailers,* 308 F.3d 776, 780 (7th Cir. 2002).

Whether Wal-Mart is entitled to summary judgment on this issue is a close question, but even if Orlando could show that a genuine issue of fact exists on this element of her case, the undisputed facts show that she has failed to support other elements of her *prima facie* case. Wal-Mart has established without contradiction from Orlando and beyond reasonable dispute that she was not performing her job satisfactorily. This continued to be the case even after she was informed of complaints about her performance and after she was instructed on how to perform the job to which she was assigned while the store was being prepared for opening.

Orlando also has not shown that similarly situated non-disabled employees of Wal-Mart were treated more favorably than Orlando. In fact, the only individual Orlando identifies as being treated more favorably was her colleague, Miguel, who was wheelchair bound and was to perform the duties of a People Greeter. She felt that Miguel was treated more favorably because he sat in a wheelchair when performing any tasks. This point does not meet the required showing, however. Orlando's theory that she was treated worse than

another person with a disability does not show discrimination on the basis of disability. Also, during her employment, Orlando sat while performing her job duties. She never performed the duties of a People Greeter and never requested a chair.

Because Orlando cannot show the elements of a *prima facie* case of disability discrimination, the court must grant Wal-Mart's motion for summary judgment. *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993) ("Without a *prima facie* case, the plaintiff cannot withstand summary judgment."). Even if Orlando could establish a *prima facie* case of discrimination, however, Wal-Mart has articulated a legitimate, nondiscriminatory reason to end her employment. The reason was her failure to perform her tasks in a manner satisfactory to Wal-Mart. Orlando has not replied with a showing that Wal-Mart's proferred reason for terminating her employment were a pretext. See *Timmons v. GMC,* 469 F.3d 1122, 1126 (7th Cir. 2006) (stating that when employer articulates a legitimate nondiscriminatory reason for adverse employment action, employee must show that reason is pretext for discrimination); *Burks v. Wis. Dep't of Transp.,* 464 F.3d 744, 754 (7th Cir. 2006) ("In order to be pretextual, the preferred reasons must be a 'lie.'").

As the non-movant, Orlando bears the burden of coming forward with specific facts from the record that show a genuine issue of material fact. *Morfin v. City of East Chicago,* 349 F.3d 989, 997 (7th Cir. 2003) (citation omitted). Orlando has not come forward with evidence that establishes a *prima facie* case for her claim. Even if she had, she has not offered evidence that Wal-Mart's stated reason for its action was pretextual. Accordingly, Wal-Mart's motion for summary judgment must be granted. Judgment consistent with this Entry shall now issue.

So ordered.

_David F. Hamilton_
DAVID F. HAMILTON, Chief Judge
United States District Court

Date:    9/25/09